OPINION OF THE COURT
Per Curiam.
Respondent was admitted to the practice of law in the State of New York by the First Judicial Department on June 14, 1999 as Patrick James Maruggi. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department. Respondent has not appeared in this proceeding.
In an order dated July 28, 2011, this Court suspended respondent from the practice of law based on his failure to cooperate with the Departmental Disciplinary Committee’s investigation of two complaints made against him (87 AD3d 201 [1st Dept 2011]).
In October 2012, the Committee charged respondent with fraudulently executing a deed and other conveying documents, intentionally converting escrow funds, making misrepresentations to the Committee, and failing to cooperate with the Committee’s investigation in violation of Code of Professional Responsibility DR 1-102 (a) (4) and (7) and DR 9-102 (a) (22 NYCRR 1200.3 [a] [4], [7]; 1200.46 [a]) and rule 8.4 (c), (d) and (h) of the Rules of Professional Conduct (22 NYCRR 1200.0).
Respondent’s misconduct arose from his business of originating private mortgage loans to real estate investors for the purchase and rehabilitation of distressed properties in and around the area of Philadelphia, Pennsylvania. Respondent conducted this business through Pinnacle Capital Funding, LLC (Pinnacle), a Delaware entity which he owned and operated with his partner Marifa Roho. Pinnacle issued promissory notes to investors that provided for interest only payments during the term of the note. Upon satisfaction of an underlying mortgage on a property, the principal would be reinvested in new mortgages until the note’s maturity date, at which time the entire principal was supposed to be paid to the investor. Respondent collected and remitted mortgage payments to Pinnacle investors, arranged new loans, and performed various legal services, which included real estate transfers and mortgage closings.
In 2005, Ralph Emproto became a Pinnacle investor. Emproto established LLEM Corp. (LLEM), a New York Corporation, as a vehicle to manage his investments and made an initial investment of $250,000 in Pinnacle. Over time, he increased his investment to more than $600,000. Pinnacle invested LLEM’s *182 funds in mortgages on as many as 17 properties in Philadelphia. In 2007, however, Pinnacle ceased making interest payments to its investors, including LLEM. Respondent advised Emproto that, as a result of the financial crisis, borrowers had stopped paying the mortgages in which LLEM had invested and were letting properties go to foreclosure.
In 2005, respondent, through Pinnacle, originated two mortgage loans funded by LLEM to a third party totaling $94,574.78 to purchase and rehabilitate two properties at 1500 and 1610 West Tioga Street. The third party defaulted on the mortgages and, in May 2006, respondent recorded a deed in lieu of foreclosure which transferred title to the properties to LLEM. Respondent did not inform Emproto of either the default or the recording of the deed.
In September 2006, respondent, without authorization from Emproto or LLEM, sold the 1500 West Tioga Street property for $65,000 to CK Investments LLC (CK Investments), an entity owned solely by the mother of respondent’s partner. At the closing, respondent falsely signed his name to the deed of transfer and other documents as president of LLEM. CK Investments also purchased 1615 West Tioga Street which, along with its purchase of 1500 West Tioga Street, was funded by a $220,000 blanket mortgage issued by MDS Management Services, LLC (MDS Management). It was agreed that $37,469.43 of the MDS Management loan proceeds would be held in escrow to be used for rehabilitation work at the premises. The funds were deposited into respondent’s IOLA account. However, between 2006-2007, he made withdrawals without MDS Management’s permission or authority.
In July 2009, a complaint was filed with the Committee on behalf of MDS Management based, on respondent’s conversion of the aforementioned $37,469.43 in “rehab” escrow funds. Respondent submitted an answer to the complaint in which he, inter alia, denied that he received any funds at closing other than loan origination fees. Thereafter, respondent failed to respond to the Committee’s requests that he produce his IOLA account records and related information; nor did respondent comply with a judicial subpoena directing his appearance and production of documents.
Respondent failed to answer the charges despite being served by first-class mail and certified mail, return receipt requested. The Committee also sent respondent two letters, both by certified mail, and an email advising him that he was in default of the charges and that a hearing had been scheduled.
*183 On December 19, 2012, a hearing convened before Referee Hon. Stanley Parness. Respondent did not appear. The Referee granted the Committee’s request that all the charges be sustained by reason of the documentary evidence and respondent’s default. The record was kept open until January 3, 2013 for submission of aggravating or mitigating evidence in relation to sanction. The Committee advised respondent by first-class and certified mail, return receipt requested, that all charges had been sustained and that he had until January 3, 2013 to submit evidence in mitigation. Respondent failed to respond to the Committee’s letter. Thereafter, the Committee submitted its proposed findings in which it argued that respondent should be disbarred and served respondent by first-class and certified mail, return receipt requested. Respondent made no submission in response, nor did he contact the Committee or Referee in regard to this matter. By report dated February 6, 2013, the Referee reiterated his finding sustaining all the charges and recommended that respondent be disbarred.
On April 9, 2013, a Hearing Panel heard oral argument. Respondent failed to appear at argument despite having been given repeated, prior notice. In its report dated April 23, 2013, the Hearing Panel agreed that respondent engaged in serious misconduct and adopted the Referee’s recommendation of disbarment.
The Departmental Disciplinary Committee now seeks an order, pursuant to Rules of the Appellate Division, First Department (22 NYCRR) §§ 603.4 (d) and 605.15 (e) (2), confirming the Hearing Panel’s findings of fact and conclusions of law, and disbarring respondent. Respondent was served with the Committee’s petition by first-class mail and certified mail, return receipt requested, but has not submitted a response.
As noted by the Hearing Panel, respondent’s intentional conversion of client funds standing alone warrants his disbarment. It is well-settled law within the First Department that, absent “exceptional mitigating circumstances[,] the intentional conversion of escrow funds mandates disbarment” (Matter of Katz, 109 AD3d 143, 146 [1st Dept 2013] [internal quotation marks omitted]). Here, respondent has presented no exceptional mitigating circumstances.
Disbarment is further supported by respondent’s failure to cooperate with the Committee (see Matter of Holubar, 84 AD3d 100 [1st Dept 2011] [the respondent disbarred for, inter alia, intentional conversion of client funds, failed to answer charges *184 and appear in disciplinary proceeding]; Matter of McClain-Sewer, 77 AD3d 204 [1st Dept 2010] [the respondent disbarred for practicing while under interim suspension, failed to answer charges and appear in disciplinary proceeding]). Also, respondent’s fraudulent transfer of real estate belonging to LLEM without its authorization is serious misconduct in and of it itself and further supports disbarment (see Matter of Alviar, 21 AD3d 50 [1st Dept 2005] [one-year suspension for, inter alia, forging client’s signature on documents related to real estate transaction]).
Accordingly, the petition is granted, and respondent’s name is stricken from the roll of attorneys and counselors-at-law in the State of New York.
Gonzalez, P.J., Moskowitz, Freedman, Richter and Manzanet-Daniels, JJ., concur.
Respondent disbarred, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof.